2014 COA 144

**The PEOPLE of the State of Colorado,**
Plaintiff–Appellee,

v.

**Joel Antonio CALDERON,**
Defendant–Appellant.

**Court of Appeals No. 13CA0828**

Colorado Court of Appeals,
Div. VI.

Announced October 23, 2014

Rehearing Denied November 26, 2014

John W. Suthers, Attorney General, Brock J. Swanson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Rachel C. Funez, Deputy Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE FOX

¶ 1 Defendant, Joel Antonio Calderon, appeals the district court's orders (1) revoking his probation and (2) denying his motion for reconsideration. We reverse and remand the case for further proceedings.

## I. Background

¶ 2 In 2010, defendant pleaded guilty to attempted first degree trespass of an automobile with the intent to commit a crime, and the court sentenced him to two years of intensive supervised probation, with ninety days in jail.

¶ 3 A few months later, defendant's probation officer filed a probation revocation complaint. At the revocation hearing, the probation officer testified that she never had a chance to meet with defendant because he had been released from jail directly to the custody of Immigration Customs Enforcement (I.C.E.).

¶ 4 After the hearing, the district court found that defendant had violated the terms of his probation. The court revoked his probation and resentenced him to two years of intensive supervised probation.

¶ 5 Defendant then filed a motion for reconsideration, arguing that the prosecution (1) failed to establish his identity as the individual who violated probation and (2) only presented hearsay evidence to prove that he had been deported.

¶ 6 The district court denied the motion, finding that (1) the motion did not raise any arguments that had not been raised and considered during the hearing and (2) its ruling that defendant had violated the terms of his probation was proper.

## II. Mootness

¶ 7 Initially, we reject the People's argument that the appeal should be dismissed as moot because defendant has been deported.

■ ¶ 8 "Whether an appeal is moot is a question of law that we decide de novo." *People v. Garcia*, 2014 COA 85, ¶ 8, 356 P.3d 913.

■ ¶ 9 "A case is moot when a judgment, if rendered, would have no practical legal effect on an existing controversy." *Warren v. People*, 192 P.3d 477, 478 (Colo. App.2008). Generally, an appellate court will decline to render an opinion on the merits of an appeal if the issue is moot. *See People v. McMurrey*, 39 P.3d 1221, 1223 (Colo.App. 2001).

¶ 10 A division of this court has dismissed as moot an appeal of a defendant's sentence to probation based on the defendant's deportation while the appeal was pending. *See People v. Garcia*, 89 P.3d 519, 519–20 (Colo. App.2004). The division reasoned that the outcome of the appeal would have no practical effect on the defendant because he (1) had been *permanently* barred from re-entry into the United States based on the nature of his conviction (sexual assault on a minor by one in a position of trust) and (2) had only appealed his sentence (and not the conviction that could alter the status of his ability to re-enter the country). *See id.* at 520; *see also Garcia*, ¶ 12 (concluding that the appeal was moot based on his deportation because the defendant (1) had already served his sentence; (2) was not contesting his conviction; and (3) was permanently barred from re-entering the United States based on his conviction).

¶ 11 Here, the record contains a 2013 pretrial release services bond report, stating that (1) certain databases showed that defendant's alien status was inadmissible; (2) defendant had self-reported an illegal re-entry into the United States; and (3) defendant had been incarcerated in West Virginia for two and a half years. But, unlike in *Garcia*, 89 P.3d at 520, the record here does not show that defendant is permanently barred from re-entry into the country.

¶ 12 The People rely on the bond report and argue that defendant is barred from re-entry under 8 U.S.C. § 1182(a)(9)(C)(i)(II) (2012), which provides that an alien is, in general, inadmissible if he "has been ordered removed under section 1225(b)(1) of this title, section 1229a of this title, or any other provi-

sion of law, and who enters or attempts to re-enter the United States without being admitted." However, that statute has an exception for an alien seeking admission more than ten years after the date of his last departure from the United States. *See* § 1182(a)(9)(C)(ii). Therefore, even if section 1182(a)(9)(C) applies, it does not follow that defendant is permanently barred from re-entry.

¶ 13 Because the record does not establish that defendant is permanently barred from re-entry into the country, we cannot say that the disposition of this appeal would not have a practical legal effect on him. Defendant's probation officer has filed another probation revocation complaint, and there is an outstanding warrant for his arrest. The appeal is therefore not moot. *See Warren*, 192 P.3d at 478.

¶ 14 The dissent, however, maintains that the appeal is moot and relies, in part, on the following cases: *United States v. Mercurris*, 192 F.3d 290 (2d Cir.1999); *United States v. Vera–Flores*, 496 F.3d 1177 (10th Cir.2007); and *United States v. Rosenbaum-Alanis*, 483 F.3d 381 (5th Cir.2007). We find these cases to be distinguishable.

¶ 15 In *Mercurris*, a defendant charged with illegal re-entry into the United States challenged the district court's determination that his earlier convictions for selling marijuana were "aggravated felonies" for sentencing purposes. *Mercurris*, 192 F.3d at 292. Under federal sentencing guidelines, a prior conviction for an "aggravated felony" enhanced the defendant's maximum potential sentence from one year to more than six years. *Id.* By the time the challenge reached the Second Circuit, however, the defendant had already served his entire sentence and been deported. *Id.* at 293. Thus, there was no continuing injury or collateral consequence resulting from the conviction that could have been redressed by a favorable judicial decision. *Id.* at 293.

¶ 16 Defendant, unlike the defendant in *Mercurris*, has not completed his sentence and faces a real possibility that his probation could be revoked again in the future. And, as indicated above, there is nothing in the record to indicate that he is permanently

barred from re-entry. If he re-enters the country, the consequences of that revocation will constitute a "concrete and continuing injury" that could be redressed by a favorable judicial decision. *See id.* at 293–94.

¶ 17 In *Vera–Flores*, the Tenth Circuit addressed whether a criminal case was moot as a result of the defendant's deportation. *Vera–Flores*, 496 F.3d at 1180–83. The defendant in *Vera–Flores* had been sentenced to a year in prison, to be followed by three years' supervised release. *Id.* at 1179. He completed his term of incarceration, was released, and was deported. *Id.* at 1180. He challenged his sentence, and the Tenth Circuit concluded that the appeal was moot. *Id.* at 1182. While the defendant was out of the country, the court reasoned, he was unaffected by any sentencing error and the likelihood that the defendant would lawfully re-enter the country while his sentence was still in effect was extremely remote. *Id.* at 1180–81. Therefore, the defendant's liberty was "in no way affected by any sentencing error," and he had no injury that could be redressed by a favorable judicial decision. *Id.* at 1181.

¶ 18 Here, however, the consequences of defendant's probation revocation are not limited in time. If defendant decides to lawfully re-enter the United States—which, as noted, the record does not show that he is permanently barred from doing—a probation revocation and the resulting consequences remain active.

¶ 19 Finally, in *Rosenbaum-Alanis*, the court declared the case moot because the defendant, who asked that his case be remanded for resentencing, had already completed his term of imprisonment and been deported. 483 F.3d at 382–83. Therefore, even if the court ruled in his favor and remanded the case for resentencing, the defendant could not have been present for resentencing as required by Federal Rule of Criminal Procedure 43. *Id.*; Fed.R.Crim.P. 43(a).

¶ 20 Here, however, defendant will not be eligible for a new sentence on remand from a favorable appellate ruling. The court can only reinstate his original sentence, for which he *was* physically present in accordance with Crim. P. 43. Pursuant to the rule, his presence is not therefore required. *See People v.*

*Renfrow*, 199 Colo. 101, 103, 605 P.2d 915, 916 (1980) (concluding that the defendant is entitled to be present when the sentence is reduced); *see also People v. Nelson*, 9 P.3d 1177, 1178–79 (Colo.App.2000) (permitting the trial court to correct a mittimus to include the mandatory period of parole without the defendant's presence because the court would not be imposing a new sentence to take the place of the original one).

¶ 21 We therefore conclude that this appeal is not moot.

### III.  Probation Revocation

¶ 22 Defendant contends that the district court violated his right to due process when it revoked his probation based on a violation of a condition of probation, where he did not receive (1) notice of the probation conditions when he was sentenced to probation or (2) written notice of those conditions in the revocation complaint. We agree.

### A.  Standard of Review

¶ 23 We review de novo whether there was a violation of defendant's right to due process. *See Quintano v. People*, 105 P.3d 585, 592 (Colo.2005) (reviewing de novo whether a defendant was denied due process because it is a question of law); *People v. Nave*, 689 P.2d 645, 647 (Colo.App.1984) (concluding that the existence of a due process violation is a question of law).

### B.  Notice of the Conditions of Probation

¶ 24 A defendant must be given written notice of the conditions of his probation. *See* § 18–1.3–204(3), C.R.S.2014. The purpose of doing so is to provide him with notice of those conditions. *See People v. Zimmerman*, 616 P.2d 997, 999 (Colo.App. 1980). Although the statute requires written notice, actual notice of the conditions is an adequate substitute. *See id.* Thus, failure to provide written notice does not require reversal of an order revoking probation if there is evidence that the defendant had actual notice of the condition on which the court relied. *See id.*

¶ 25 The court found that defendant violated the condition of probation that required

him to contact and report to the probation department.

¶ 26 It is undisputed that defendant did not receive written notice of the conditions of his probation. In the revocation complaint, the probation officer alleged that defendant had been released into the custody of Immigration and Customs Enforcement (ICE) before he was "able to sign the terms and conditions of probation." At the revocation hearing, the probation officer testified that she never went over the terms and conditions of probation with defendant because she "did not have a chance to get over to the jail before he was deported."

¶ 27 There is also no evidence that defendant had actual notice of the probation conditions. Although the court found that defendant had likely been told when he was sentenced that he had "an obligation to contact probation," the sentencing transcript shows that the court did not tell him that he needed to contact or report to probation. Also, actual notice of a specific condition cannot be derived from the sentence to probation itself.

¶ 28 Under these circumstances, we conclude that defendant did not receive written or actual notice of the conditions of his probation, which requires reversal of the order revoking his probation. *Cf. id.* (concluding that the failure to provide the defendant with written notice of the terms of his probation did not require reversal of the order revoking his probation because the defendant had actual notice that he had to report to his probation officer and could not leave the state, where he had "continual communications with his probation officer in person, by telephone, and by mail" and had obtained permission to travel to Utah and unsuccessfully attempted to inform his probation officer of his intent to travel to Arizona).

### C. Written Notice of the Violation

¶ 29 We also agree that defendant was deprived of his due process right to written notice in the revocation complaint of the condition of probation that he allegedly violated.

¶ 30 Because probation is a privilege and not a right, a probationer's conditional liberty interest is afforded limited procedural due process protections. *See People v. Robles,* 209 P.3d 1173, 1174 (Colo.App.2009). Those protections include the right to written notice of the claimed violations of probation. *See Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Robles,* 209 P.3d at 1174; *see also People v. Moses,* 64 P.3d 904, 908 (Colo.App.2002) ("A probationer has a due process right to be informed of the specific probation violations with which he or she is charged prior to a probation revocation hearing."). A probationer also has a statutory right to written notice of the condition of probation that he is alleged to have violated. *See* § 16–11–205(5), C.R.S. 2014.

¶ 31 Failure to provide written notice is a violation of due process that requires reversal. *See People v. McKitchens,* 655 P.2d 858, 859–60 (Colo.App.1982) (concluding that the defendant's failure to receive written notice of one of the two charges alleged at the hearing violated his right to due process and remanding the case to the district court to determine whether to revoke his probation based only on the charge of which he had written notice); *accord Robles,* 209 P.3d at 1174–75 (concluding that the defendant received constitutionally sufficient written notice in a motion to continue the revocation hearing).

¶ 32 "Whether a probationer received constitutionally sufficient written notice of a claimed violation is a mixed question of law and fact." *Robles,* 209 P.3d at 1174. We defer to the district court's findings of fact, but review its conclusions of law de novo. *See People v. Garcia,* 11 P.3d 449, 453 (Colo.2000).

¶ 33 The revocation complaint did not state the condition of probation that defendant had allegedly violated, but only identified the evidence that allegedly showed a violation. The complaint alleged that the probation officer had been notified by (1) the jail that defendant had been released to ICE and (2) an ICE deportation officer that defendant had been deported to Mexico, had been arrested when he tried to re-enter the United States with a stolen passport, and was being held in El Paso, Texas, pending federal prosecution. It then summarily alleged that the probation

officer believed that defendant "violated the conditions of supervision," without identifying any specific condition of probation. Further, unlike in *Robles*, defendant did not receive written notice in any other manner.

¶ 34 Because defendant did not receive written notice, we conclude that the violation requires reversal of the order revoking his probation. *See McKitchens*, 655 P.2d at 859–60.

¶ 35 Based on our conclusion, we need not consider defendant's arguments that the prosecution failed to prove (1) his identity and (2) that he knowingly, willfully, and unreasonably failed to comply with the terms of his probation.

## IV. Sentence

¶ 36 But we reject defendant's argument that his sentence to probation should be discharged.

¶ 37 A sentence to probation begins when the judgment of conviction has been entered. *See* § 18–1.3–202(1), C.R.S.2014 ("If the court chooses to grant the defendant probation, the order placing the defendant on probation shall take effect upon entry.").

¶ 38 "The district court loses jurisdiction over a probationer after the term of probation has expired." *People v. Galvin*, 961 P.2d 1137, 1138 (Colo.App.1997). However, the initiation of revocation proceedings, including the filing of a revocation complaint, tolls the probationary period until the proceedings are completed, terminated by the probation officer, or dismissed by the court. *See id.* at 1138–39.

¶ 39 Defendant's probationary sentence began on September 10, 2010, when he was sentenced. The probationary period was tolled when his probation officer filed the revocation complaint on December 13, 2010. And the tolling continues until the completion of this revocation proceeding. Therefore, even though more than two years have passed since defendant was sentenced to probation, the probationary period has not yet been completed.

## V. Conclusion

¶ 40 The orders are reversed, and the case is remanded to the district court to reinstate defendant's original sentence to probation.

JUDGE ASHBY concurs.

JUDGE BERNARD dissents.

JUDGE BERNARD dissenting.

¶ 41 I respectfully dissent. This appeal is moot for three reasons.

¶ 42 First, the federal government deports many defendants who have appealed only their sentences. Federal law permanently bars some of these defendants from re-entering the United States. Appeals in such circumstances are moot because their "outcome … has no practical effect[.]" *People v. Garcia*, 89 P.3d 519, 520 (Colo.App.2004); *accord People v. Garcia*, 2014 COA 85, ¶¶ 12–15, 356 P.3d 913.

¶ 43 The record indicates that 8 U.S.C. § 1182(a)(9)(C)(i)(II) (2012), which concerns "[a]liens unlawfully present after previous immigration violations," now bars defendant's admission to the United States. This statute generally "provides a *lifetime* bar on admission[.]" *Delgado v. Mukasey*, 516 F.3d 65, 69 (2d Cir. 2008) (emphasis added); *see also Fernandez–Vargas v. Ashcroft*, 394 F.3d 881, 885 (10th Cir.2005) ("Generally, a previously removed alien who illegally re-enters the United States is permanently inadmissible to the United States under" section 1182(a)(9)(C)(i)(II).); *Berrum–Garcia v. Comfort*, 390 F.3d 1158, 1166 (10th Cir. 2004) (same).

¶ 44 But there is a potential discretionary exception to the lifetime bar. § 1182(a)(9)(C)(ii). If aliens wait abroad until "at least ten years have elapsed" since their "latest departure" from the country, then they may ask the Secretary of Homeland Security for a "discretionary waiver" to reapply for admission to the United States. *Delgado*, 516 F.3d at 69.

¶ 45 As we now consider this appeal, federal law permanently bars defendant from re-entering the country. The Secretary of Homeland Security *could*, ten years from when defendant last left the United States, allow him to seek a waiver to reapply for admission. What if the Secretary allowed him to file such a waiver and later granted his application for admission? His presence in the United States would simply be the

product of an act of grace bestowed upon him by the executive branch. It would not be the product of any guaranteed right bestowed upon him by the Constitution. *See Zadvydas v. Davis,* 533 U.S. 678, 693, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) ("It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders."); *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982)("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative."); *cf. Ashki v. I.N.S.,* 233 F.3d 913, 921 (6th Cir.2000) (An illegal alien "has no constitutionally-protected liberty interest in obtaining discretionary relief from deportation."); *Appiah v. I.N.S.,* 202 F.3d 704, 709 (4th Cir.2000) ("Suspension of deportation is ... an 'act of grace' that rests in the 'unfettered discretion' of the Attorney General." (quoting *I.N.S. v. Yueh–Shaio Yang,* 519 U.S. 26, 30, 117 S.Ct. 350, 136 L.Ed.2d 288 (1996))).

¶ 46 I would conclude that this case is analytically indistinguishable from Colorado's two *Garcia* opinions. We cannot reliably predict that defendant will seek a waiver under 8 U.S.C. § 1182(a)(9)(C)(ii) ten years from now. Defendant cannot credibly claim that he will have any control over the Secretary of Homeland Security's decision to grant or deny such a waiver. He cannot effectively guarantee that the Secretary's decision will favor him.

¶ 47 Indeed, defendant only has a "quixotic chance of legally returning to the United States." *See United States v. Mercurris,* 192 F.3d 290, 294 (2d Cir.1999); *see also Carrillo de Palacios v. Holder,* 708 F.3d 1066, 1074 (9th Cir.2013)("[T]he underlying purpose of § 1182(a)(9)(C) 'was to single out recidivist immigration violators and make it more difficult for them to be admitted to the United States after having departed.'" (quoting *In re Briones,* 24 I. & N. Dec. 355, 358 (B.I.A. 2007))). Because defendant's chance of returning legally is remote, "the possibility" that the resolution of this appeal "could make a difference to him ... is too speculative" to create a case or controversy under our mootness jurisprudence. *See Mercurris,* 192 F.3d

at 294; *see also People v. Devorss,* 277 P.3d 829, 833 (Colo.App.2011)("An issue becomes moot when any relief granted by the court would not have a practical effect upon an existing controversy.").

¶ 48 Second, as long as defendant is outside of the United States, he "has no obligation to report to a probation officer," and he obviously will not serve a prison sentence. *See United States v. Vera–Flores,* 496 F.3d 1177, 1181 (10th Cir.2007). He is not "under the supervision or control" of any probation officer or of any corrections officer. *Id.* His liberty is not "affected by any [alleged] sentencing error ... because [his] deportation has eliminated all practical consequences associated with serving" a probationary term, or, for that matter, a prison term. *Id.* I would therefore conclude that defendant has not shown that he has suffered "an actual injury likely to be redressed by a favorable judicial decision." *See id.* ("[T]his court cannot presume that collateral consequences arise from any alleged sentencing errors."); *see also Spencer v. Kemna,* 523 U.S. 1, 14, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (Supreme Court declined to presume that an allegedly improper parole revocation generated collateral consequences).

¶ 49 Third, the trial court cannot reinstate defendant's sentence to probation on remand because he is not able to attend the resentencing hearing. *See* Crim. P. 43(a) ("The defendant shall be present ... at the imposition of sentence[.]"). His continued absence renders this appeal moot for that reason. *See United States v. Rosenbaum-Alanis,* 483 F.3d 381, 383 (5th Cir.2007)("Because the defendant has been deported ... and is legally unable, without the permission of the Attorney General, to re-enter the United States to be present for a resentencing proceeding as required by [Fed.R.Crim.P. 43], there is no relief we are able to grant him and his appeal is moot.").

¶ 50 But an appellate court will address the merits of an otherwise moot appeal if the issues are " 'capable of repetition, yet evading review,' " or if the appeal involves " 'question[s] of great public importance or ... allegedly recurring constitutional violation[s].' " *Humphrey v. Sw. Dev. Co.,* 734

P.2d 637, 639 (Colo.1987)(quoting *Goedecke v. Dep't of Insts.*, 198 Colo. 407, 410 n.5, 603 P.2d 123, 124 n. 5 (1979), and *Zoning Bd. of Adjustment v. DeVilbiss*, 729 P.2d 353, 356 n.4 (Colo.1986)). I would conclude that the exceptions to the mootness doctrine do not apply in this case for three reasons.

¶ 51 First, defendant has not established that the issues he raises are capable of repetition and that they will evade review. Appellate courts will continue to address such issues, should they arise, in cases in which defendants have not been permanently deported.

¶ 52 Second, although the issues that defendant raises are certainly important to him, they are not issues of *great* public importance, and they do not allege a *recurring* constitutional violation. Defendant has not established that any purported error that he raises necessarily affects others. For example, he has not shown that the trial court has committed a similar error in other cases; that he has standing to assert the rights of other defendants; that there is a bar to other defendants asserting their rights; or that the only way to overcome such a putative bar would be for us to resolve this appeal. *See Humphrey*, 734 P.2d at 639–40.

¶ 53 Third, defendant has not shown that the issues he raises generally implicate broader procedural or institutional questions. For example, he has not established that we must address this issue because its resolution will (1) affect the common existing practice in imposing conditions of probation; (2) prevent an expansion of the jurisdiction of trial courts in imposing such conditions; (3) be of significant assistance to trial courts when they conduct future sentencing proceedings; (4) assist the orderly resolution of such cases; or (5) be of statewide public importance. *See id.; see also State Bd. of Chiropractic Exam'rs v. Stjernholm*, 935 P.2d 959, 971 (Colo.1997).

¶ 54 I would conclude, under these circumstances, that this appeal is moot. I would therefore dismiss it. *See Garcia*, ¶¶ 12–15; *Garcia*, 89 P.3d at 520.